Jack Silver, Esquire SBN# 160575
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, California 95402-5469
Telephone: (707)528-8175
Facsimile: (707) 528-8675
E-mail: lhm28843@sbcglobal.net

Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>REDWOOD OIL COMPANY, INC and DOES 1-10, Inclusive,<br><br>Defendants.<br>_____/ | CASE NO.:<br><br>COMPLAINT FOR INJUNCTIVE RELIEF CIVIL PENALTIES, RESTITUTION AND REMEDIATION<br><br>(Environmental - Resource Conservation and Recovery Act - 42 U.S.C. § 6901, et seq.) |

NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter, "RIVER WATCH") by and through its attorneys, and for its Complaint against defendant, REDWOOD OIL COMPANY, INC. (hereafter "REDWOOD OIL"), and DOES 1-10, inclusive, and states as follows:

## I. INTRODUCTION

1.      This is a civil suit brought against REDWOOD OIL, and as yet unidentified DOES under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. (hereafter, "RCRA"); and California law governing the Underground Storage of Hazardous Substances: California Heath & Safety Code § 25280 et seq.

This complaint seeks relief for REDWOOD OIL's discharge of pollution from its current and/or former fuel dispensing facilities and its properties all  located in the State of California located as follows:

Site A - Redwood Oil Bulk Plant #141, 455 Yolanda Avenue, Santa Rosa,

1    Site B - Redwood Oil Service Station, (Windsor Chevron) 9120 Old Redwood Highway,

2        Windsor,

3    Site C - Redwood Oil Service Station #102, 7716 Old Redwood Highway, Cotati, and,

4    Site D - Redwood Oil Service Station, 1100 Bennett Valley Road, Santa Rosa,

5  (hereafter collectively, "Facilities") into the waters of the State of California and the United States in

6  violation of the above-enumerated statutes and laws.

7  2.    By this Complaint RIVER WATCH seeks:

8        a    To enjoin REDWOOD OIL from discharging pollutants from each of the Facilities into

9            the ground and surface waters surrounding and downstream of the Facilities;

10       b.    A court order directing REDWOOD OIL to comply with the substantive and procedural

11            requirements of the above enumerated statutes and laws;

12       c.    A court order directing REDWOOD OIL to pay civil penalties or establish remediation

13            projects in lieu of penalties for violations of the above enumerated statutes and laws; and,

14       d.    A court order directing REDWOOD OIL to reimburse RIVER WATCH for its reasonable

15            costs of suit, including attorneys' fees, as allowed under Section 7002(e) of the RCRA,

16            42 U.S.C. § 6972(e).

17                        **II.  JURISDICTION**

18  3.    This Court has subject matter jurisdiction over all Federal causes of action in this Complaint

19  pursuant to RCRA §§ 7002(a) & (b), 42 U.S.C. §§ 6972 (a) & (b) and 28 U.S.C. § 1221 (an action for

20  declaratory and injunctive relief arising under the Constitution and laws of the United States).  This

21  Court has supplemental jurisdiction over all State-based causes of action in this Complaint pursuant to

22  28 U.S.C. § 1367, as those claims form part of the same case or controversy as the Federal causes of

23  action

24  4.    On or about November 29, 2007, RIVER WATCH provided a Notice of Violations and Intent

25  to File Suit (hereafter, "RCRA NOTICE"), for REDWOOD OIL's violations of the RCRA to the

26  Administrator of the United States Environmental Protection Agency (hereafter, "EPA"), the

27  Administrator of the Environmental Protection Agency - Region IX, the Executive Director of the State

28  Water Resources Control Board, the Executive Director of the California Integrated Waste Management

1    Board, and to REDWOOD OIL, as required by the RCRA.  A true and correct copy of the RCRA

2    NOTICE  is attached hereto as EXHIBIT A and fully incorporated into this Complaint.

3    5.        Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from,

4    own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit from the

5    affected watershed area and associated natural resources into which the REDWOOD OIL Facilities

6    discharge, or by which REDWOOD OIL's operations adversely affect members' interests, in violation

7    of the above-enumerated laws or statutes. The health, economic, recreational, aesthetic and

8    environmental interests of RIVER WATCH and its  members may be, have been, are being, and will

9    continue to be adversely affected by REDWOOD OIL's unlawful violations of the above-enumerated

10   laws or statutes.  RIVER WATCH contends that there exist injuries in fact to its members, causation of

11   these injuries by the conduct of REDWOOD OIL complained of herein, and a likelihood that the

12   requested relief will specifically redress these injuries. RIVER WATCH, through its members, has

13   standing to bring this action. A copy of this Complaint shall be provided to the United States Attorney

14   General, the Administrator of the United States EPA, and the Attorney General of California.

### III.  INTRADISTRICT ASSIGNMENT

16   6.        The basis for assignment of this case to the Northern District of California, pursuant to RCRA

17   §§ 7002(a) & (b), 42 U.S.C. §§  6972 (a)& (b), is that REDWOOD OIL's Facilities and operations are

18   located in this District.

### IV.  PARTIES

20   7.        Plaintiff RIVER WATCH is a 501(c)(3) non-profit public benefit corporation duly organized

21   under the laws of the State of California. Its headquarters are located at 6741 Sebastopol Road, Suite

22   140, Sebastopol, California.  RIVER WATCH is dedicated to protecting, enhancing and helping to

23   restore the waters of Northern California, including its drinking water sources, ground water, rivers,

24   creeks and tributaries. Many of RIVER WATCH's members live in areas affected by REDWOOD OIL's

25   pollution as described in this Complaint.  Said members have interests in the affected watersheds which

26   are or may be adversely affected by REDWOOD OIL's violations as set forth in this Complaint. Said

27   members use the affected watershed for domestic water supply, agricultural water supply, recreation,

28   sports, fishing, swimming, hiking, photography, nature walks and the like.  Furthermore, the relief

1   sought herein will specifically redress the injuries in fact, and the likelihood of future injuries and
2   interference with the interests of RIVER WATCH's members.

3   8.      RIVER WATCH is informed and believes and on said information and belief alleges that
4   defendant REDWOOD OIL is a corporation registered under the laws of the State of California, and
5   doing business in California as Redwood Oil Company, Inc. at 50 Professional Center Drive, Suite 100,
6   Rohnert Park, California.

7   9.      Defendants DOES 1-10, inclusive, respectively, are persons, partnerships, corporations and
8   entities, who are, or were, responsible for, or in some way contributed to, the violations which are the
9   subject of this Complaint, or are, or were, responsible for the maintenance, supervision, management,
10  operations, or insurance coverage of REDWOOD OIL's Facilities. The names, identities, capacities, and
11  functions of DOES 1-10, inclusive, are presently unknown to RIVER WATCH, which shall seek leave
12  of court to amend this Complaint to insert the true names of said DOES when the same have been
13  ascertained.

14                              **V.  STATEMENT OF FACTS**

15  10.     RIVER WATCH is informed and believes and on such information and belief alleges that
16  REDWOOD OIL has owned, operated and/or leased the subject Facilities since at least the 1980's.

17  11.     REDWOOD OIL in the past has stored and/or currently stores large quantities of petroleum
18  products in underground storage tanks (hereafter, "USTs") at the Facilities.   Petroleum contamination
19  was detected in soil and groundwater beneath Site C and Site D in 1990, beneath Site A in 1991 and
20  1995, and beneath Site B in 1991.  Subsequent investigation indicated that the contamination was and
21  is attributable to leakage from USTs and piping systems, surface spills and/or poor maintenance or
22  operational practices.

23  12      Regulatory agencies have ordered REDWOOD OIL to investigate and remediate petroleum
24  contamination at the Facilities following discovery of petroleum releases. REDWOOD OIL has
25  conducted some investigative and remedial work at the Facilities in response to those agencies'
26  directives; however, based on current levels of contamination, significant levels of petroleum
27  contamination remain in soil and groundwater beneath and adjacent to the Facilities.

28

13.    Regulatory agencies have designated surface and ground waters in this area of California as capable of supporting domestic supply, and have established maximum contaminant levels for petroleum constituents in surface and ground waters.

14.    Benzene and toluene are known carcinogens and/or reproductive toxins, and have been listed chemicals under Proposition 65 at least since 1991. Surface and groundwater at the Facilities are potential sources of drinking water under applicable Regional Water Quality Control Board, Water Quality Control Plans, also known as Basin Plans.  In the course of doing business at the Facilities, REDWOOD OIL has discharged benzene and toluene to surface and groundwater.

15.    REDWOOD OIL has used and/or stored petroleum at the Facilities in a manner which has allowed significant quantities of hazardous petroleum constituents, including MTBE, to be discharged to soil and groundwater beneath the Facilities and beneath adjacent properties.

16.    To date, the levels of TPHg, benzene, toluene, ethylbenzene, and xylenes remain far above the allowable Maximum Contaminant Levels and/or Water Quality Objectives for said constituents, creating an imminent and substantial endangerment to public health and the environment.  Significant quantities of MTBE are also being detected in soil and groundwater beneath the Facilities and adjacent properties, creating an imminent and substantial endangerment to public health and the environment.

17.    The discharges by REDWOOD OIL as alleged in the RCRA NOTICE are both knowing and intentional.  REDWOOD OIL has used, stored and sold petroleum products at the Facilities, which are known to contain benzene, toluene, TPHg, ethlybenzene, xylenes, and/or MTBE, and intends or has intended that such products be sold to and used by the public. REDWOOD OIL has known of the contamination at the Facilities since at least 1990, and is also aware that failing to remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Facilities, and to continually contaminate and re-contaminate actual and potential sources of drinking water.

18.    Violations by REDWOOD OIL  of the RCRA and other statutes alleged in this Complaint are a major cause of the continuing decline in water quality, and represent a continuing threat to existing and future drinking water supplies in Northern California.  With every discharge, groundwater supplies are

1    contaminated. These discharges can and must be controlled in order for the groundwater supply to be

2    returned as a safe source of drinking water.

3                                    **VI. FIRST CLAIM FOR RELIEF**

4    **Violation of 42 U.S.C. § 6901 et seq. -  specifically 42 U.S.C. § 6972(a)(1)(A)**

5    19.    RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 18 and

6    EXHIBIT A as though fully set forth herein. RIVER WATCH is informed and believes, and based on

7    such information and belief allege as follows:

8    20.    RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), provides that any person may commence

9    a civil action against any person or governmental entity alleged to be in violation of any permit, standard,

10   regulation, condition, requirement, prohibition, or order which has become effective pursuant to the

11   RCRA. Civil penalties may be assessed against any person or entity in violation of such permits, etc.

12   under the provisions of the RCRA, 42 U.S.C. §§ 6928 (a) and (g).

13   21.    REDWOOD OIL owns and operates the Facilities at which it stores or has stored, and transfers

14   or has transferred, gasoline, diesel, fuel oil and mixed oils to or from USTs.  REDWOOD OIL's USTs

15   have been and are regulated by the North Coast Regional Water Quality Control Board and/or the

16   Sonoma County Department of Health or other local lead regulatory agency.

17   22.    The North Coast Regional Water Quality Control Board and/or the Sonoma County Department

18   of Health have imposed remediation and monitoring requirements to ensure compliance with the RCRA

19   UST program.

20   23.    RIVER WATCH is informed and believes, and thereon alleges, that REDWOOD OIL has failed

21   to comply with the statutory and regulatory leak prevention, leak detection, monitoring, and remediation

22   requirements imposed under the RCRA and described in the RCRA NOTICE.

23   24.    Continuing failure by REDWOOD OIL to effectively remediate the on-going contamination at

24   its Facilities will irreparably harm RIVER WATCH and its members, for which harm RIVER WATCH

25   and its members have no plain, speedy or adequate remedy at law.  Wherefore, RIVER WATCH prays

26   judgment against REDWOOD OIL as set forth hereafter.

27

28

# VII.  SECOND CLAIM FOR RELIEF

### Violation of 42 U.S.C. §  6901 et seq., specifically 42 U.S.C. § 6972(a)(1)(B)

25.     RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 24 and EXHIBIT A as though fully set forth herein.  RIVER WATCH is informed and believes, and based on such information and belief alleges as follows:

26.     RCRA  § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment.  Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of 42 U.S.C. §§ 6928 (a) and (g).  The RCRA UST regulatory program is adopted and implemented in California under the provisions governing the Underground Storage of Hazardous Substances (California Health & Safety Code §  25280 et seq.).

27.     REDWOOD OIL owns and operates the Facilities at which it stores or has stored, and transfer or has transferred, gasoline, diesel, fuel oil and mixed oils.

28.     The Facilities either have USTs which are leaking, or in the past have leaked petroleum chemicals including benzene, toluene, TPHg, ethylbenzene, xylenes, and MTBE into groundwater; or petroleum products have been washed off the Facilities into nearby surface waters.

29.     Petroleum products are known to be hazardous to the environment, and if released into the environment in sufficient quantity pose an imminent and substantial risk to public health and to the environment.

30.     Constituent chemicals within these petroleum products such as benzene and toluene are known carcinogens and/or reproductive toxins, and if released into the environment in sufficient quantity pose an imminent and substantial risk to public health and to the environment in general.

31.     For purposes of the RCRA, petroleum products and their constituents: TPHg, benzene, toluene, ethylbenzene, xylenes, and MTBE, are defined as "solid wastes" and "hazardous wastes" within the meaning of the statute.

32.    RIVER WATCH is informed and believes, and thereon alleges, that amounts of petroleum products and their constituents, TPHg, benzene, toluene, ethylbenzene, xylenes, and/or MTBE, released by REDWOOD OIL at the Facilities are in sufficient quantity to pose an imminent and substantial risk to both the environment and to human health.

33.    Continuing acts or failure to act by REDWOOD OIL to address these violations will irreparably harm RIVER WATCH and its members, for which harm they have no plain, speedy or adequate remedy at law. Wherefore, RIVER WATCH prays judgment against REDWOOD OIL as set forth hereafter.

## VIII.  RELIEF REQUESTED

Plaintiff RIVER WATCH, respectfully requests this Court grant the following relief:

34.    Declare REDWOOD OIL to have violated and to be in violation of the RCRA for discharging petroleum products and constituents at the Facilities which are known carcinogens and/or reproductive toxins, in sufficient quantites to pose an imminent and substantial risk to health and to the environment;

35.    Enjoin REDWOOD OIL from discharging petroleum products and petroleum constituents from the Facilities, which petroleum products and constituents pose an imminent and substantial risk to health and the environment;

36.    Order REDWOOD OIL to comply with each of the substantive and procedural requirements of the RCRA at each of the Facilities;

37.    Order REDWOOD OIL to pay civil penalties, pursuant to the provisions of the RCRA,  42 U.S.C. §§ 6928 (a) and (g); and/or to pay for remediation projects to redress harm caused by REDWOOD OIL's violations of the RCRA. Each of the above-described violations of the RCRA subjects the violator to a civil penalties on a per day per violation basis. Civil penalties may be assessed for violations occurring within five (5) years prior to the initiation of a citizen enforcement action;

38.    Enter a judgment that REDWOOD OIL is required to pay civil penalties and exemplary damages according to proof;

39.    Enter such preliminary injunctions, permanent injunctions or other orders pursuant to the RCRA requiring REDWOOD OIL to enjoin and abate the nuisance resulting from the discharge and release of petroleum products and constituents, and to enjoin the migration of petroleum products and constituents into soil and groundwater.

40.    Impose injunctive relief requiring REDWOOD OIL to immediately investigate, access and categorize the extent of pollution and implement the "best available technology" to remediate pollution at the Facilities;

41.    Impose injunctive relief requiring REDWOOD OIL to immediately commence the complete remediation of the contamination at and adjacent to the Facilities once the contaminant plume(s) have been adequately characterized.

42.    Award costs, including reasonable attorney, expert, witness, and consultant fees, to RIVER WATCH as authorized by the RCRA; and,

43.    Award such other relief as this Court may deem appropriate.

DATED: _April 22, 2008_                    LAW OFFICE OF JACK SILVER

JACK SILVER
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469      Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net

*Via Registered Mail - Return Receipt Requested*

November 29, 2007

Peter C. Van Alyea, President
Redwood Oil Company
50 Professional Center Drive, Suite 100
Rohnert Park, CA 94928-2173

**Re:**  **Notice of Violations and Intent to File Suit under the Resource Conservation and Recovery Act**

Dear Sir:

On behalf of Northern California River Watch ("River Watch"), I am providing statutory notification to Redwood Oil Company (hereafter, "Redwood Oil") of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., in conjunction with its continuing operations at its current and former Northern California gasoline service station sites. I am also providing notice of these same violations to each of the owners of the real property on which the current and former service stations are or were situated.

River Watch hereby notifies Redwood Oil that at the expiration of the appropriate notice periods under RCRA, River Watch intends to commence a civil action against Redwood Oil on the following grounds:

1.   Redwood Oil's use and storage of petroleum products at its gasoline station sites as identified in this Notice, has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding storage of petroleum in underground storage tanks ("USTs") [42 U.S.C. § 6972(a)(1)(A)];

2.   Redwood Oil's operations at the gasoline station sites identified in this Notice have caused petroleum contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

## THE SITES

1.  **Redwood Oil Bulk Plant  #141**
    **455 Yolanda Avenue, Santa Rosa**

This former bulk plant facility is located between Santa Rosa Avenue and Petaluma Hill Road in Santa Rosa, in an area of mixed commercial and residential uses.  The site is located in the Russian River Hydrogeologic Unit, in the Middle Russian River Hydrologic Area, and in the Santa Rosa Hydrologic Subarea.  Existing beneficial uses for waters of the Russian River Hydrogeologic Unit, identified in the 1993 (revised 2001) Water Quality Control Plan for The North Coast Region, are as follows:

*   Municipal and Domestic Supply
*   Agricultural Supply
*   Industrial Service Supply
*   Industrial Process Supply
*   Groundwater Recharge
*   Navigation
*   Hydropower Generation
*   Water Contact Recreation
*   Non-Contact Water Recreation
*   Commercial and Sport Fishing
*   Aquaculture
*   Warm Freshwater Habitat
*   Cold Freshwater Habitat
*   Estuarine Habitat
*   Wildlife Habitat
*   Migration of Aquatic Organisms, Spawning, Reproduction, and/or Early Development

The surface topography in the site vicinity is nearly level.  The nearest surface water body is the Colgan Creek Flood Control channel, about 1/3 mile to the west. Waters of the Colgan Creek Flood Control Channel flow into Santa Rosa Creek.  Typical groundwater flow from the site is to the south or southeast.

The site has been operated as a bulk fuel facility since approximately the 1950's.  At one time it had four above ground fuels storage tanks of 10,000 gallons each, several smaller above ground tanks, dispenser islands, loading racks, and fuel product lines, both above and below grade.

This site was originally leased by Redwood Oil in 1979, and then purchased by the company in 1982.  The real property on which the facility lies is currently owned by Peter Van Alyea, Peggy Van Alyea and Robert I. Barbieri.  Redwood Oil decommissioned the above ground tanks and installed USTs in 1981.  In 1990 two of the USTs were removed.   An unauthorized petroleum hydrocarbon release was detected at that time at concentrations of up to 2,100,000 ug/l.

In August of 1995, another hydrocarbon leak was detected. Ten USTs were removed from the original site in 1999 and 2000, and the fuel storage and cardlock facility was shifted to adjacent property at 459 Yolanda Avenue. Over-excavation was conducted at the site, followed by regular monitoring under the supervision of the North Coast Regional Water Quality Control Board ("RWQCB") in January of 1991.

In 1999 extraction wells were installed in an attempt to remediate the impacted soil and groundwater. Consulting engineers also installed a soil vapor extraction system and an air sparging system in early 2001. However, the operation of the soil vapor extraction system was discontinued in 2003, and the operation of the air sparging system was discontinued in 2005.

In December, 2004, Redwood Oil transferred the bulk plant operation at 455 Yolanda Avenue to Redwood Coast Petroleum. However it is the understanding of River Watch that there are no changes in the responsible parties for the site.

At the present time, the hydrocarbon plume extends across Yolanda Avenue at least 180 ft. to the south beneath the surface. The only method of remediation currently being utilized is groundwater extraction, although the RWQCB has notified Redwood Oil that groundwater extraction alone is not an effective alternative to treat petroleum hydrocarbons. The RWQCB has issued a Notice of Violation indicating that its feasibility study demonstrates a failure to comply with the RWQCB's Cleanup & Abatement Order of 2000.

Based upon January, 2007 monitoring, TPHg levels in groundwater are as high as 34,000 ug/l, TPHd levels are as high as 30,000 ug/l, benzene levels are as high as 4,400 ug/l, and MTBE levels are recently reported to be in the vicinity of 14,000 ug/l.

Relying upon present remediation strategies, River Watch believes the site will not be remediated in our lifetime. In the last quarter of activity, over 217,000 gallons of extracted groundwater produced only 0.08 kg of hydrocarbons. It is incumbent upon Redwood Oil to use the "best available technologies" in the cleaning up of this site. In addition, current preferential pathway studies and sensitive receptor surveys should be conducted to determine whether the existing plume continues to impact downgradient supplies of groundwater and/or threaten surface waters in its path. Given the depth of the plume, measures must be taken to prevent further contamination of the underlying aquifer. River Watch also takes the position that calculations to determine the residual plume mass need to be completed in order to provide some basis to estimate the efficacy and progress of remediation technologies.

2.    **Redwood Oil Service Station [Windsor Chevron]**
      **9120 Old Redwood Highway, Windsor, CA**

This UST site is located near the intersection of Old Redwood Highway and Windsor River Road. The area is predominantly urban/commercial, with a Shell service station across the road to the south. The real property on which this facility lies is currently owned by Robert I. Barbieri.

The nearest surface water to this site is Windsor Creek, located approximately 250 ft. to the east . Groundwater flow is predominantly to the south, towards the Shell station. The average depth to groundwater is approximately 6 to 23 ft. bgs.

With the removal of one of the USTs in 1991, an unauthorized petroleum hydrocarbon release was detected in soil samples. This discovery led to the installation of monitoring wells in early 1992. In1995 the four remaining USTs and associated piping were removed, along with approximately 4,000 cubic yards of impacted soil. Thereafter new USTs were installed south of where the old USTs had been located.

A sensitive receptor survey was conducted in the year 2000. The survey found only two upgradient wells within 1,000 ft. to the northwest of the site. These do not appear to be threatened by the site's contaminant plume.

On the basis of monitoring and well sampling in April of 2007, TPHg levels were found to be as high as 120,000 ug/l, benzene as high as 24,000 ug/l, toluene as high as 22,000 ug/l, and MTBE as high as 500 ug/l.

Residual plume mass calculations estimate that the hydrocarbons in the underlying soil is between 9,000 kg. and 27,000 kg. Similar calculations for the underlying groundwater estimate there is approximately 1,800 kg. of contamination in the groundwater at and around the site. These estimates are based upon a plume which is 350 ft. x 160 ft. and 10 ft. to 35 ft. bgs. The plume appears to be commingled with that of the downgradient plume from the Shell station. A remediation system is currently under construction consisting of groundwater extraction and an air sparging system. It is anticipated to be in operation by the fourth quarter of 2007.

At the present time very little remediation has been accomplished in the 16 years since the first release was detected. Low levels of petroleum recapture may eventuate from the groundwater extraction system; however, at the rate of anticipated cleanup, the site will remain a threat to the human population and the local area environment for another 20 years or more. River Watch believes Redwood Oil must work much more proactively to neutralize the soil and groundwater beneath and around the site by employing "best available technology" as required by the Water Quality Control Plan or Basin Plan adopted by the RWQCB.

In addition, Redwood Oil's monitoring records and reports do not establish that an adequate aquifer impact assessment has been accomplished. Given the dimensions of the plume, the depth to groundwater, the heavy volumes of contaminants currently monitored in its wells, and at the calculated rate of downgradient plume migration of approximately 22 ft. per year, the site represents an ongoing, immediate threat to local human health and the local Windsor environment.

3.    **Redwood Oil Service Station #102 [Cotati Chevron]**
      **7716 Old Redwood Highway, Cotati, CA**

This site is located on Old Redwood Highway near its intersection with Gravenstein Highway in the southern portion of the Cotati Valley. The area is one of mixed uses, including commercial, retail

and residential.  The real property on which this facility lies is currently owned by Redwood Oil. The nearest surface water is an intermittent creek, which flows from the southeast to the northwest, approximately 1,000 ft. northeast of the site.  This creek eventually reaches the Laguna de Santa Rosa.  Depths to groundwater at the site are between 5 to 9 ft. bgs, and typically flow to the east and southeast.

The first hydrocarbon release was discovered in 1990 during renovation work.  Soil concentrations were found as high as 5,700,000 ug/l.  In the following year monitoring wells were installed .  Free phase petroleum was detected in one of the wells between March of 1996 and September of 1997. In June of 1999, four USTs were removed.   Some over-excavation was done both at that time and in early 2000.  New USTs were installed sometime later in 2000.

Based upon monitoring conducted in December of 2006, TPHg levels at that time were as high as 37,000 ug/l, benzene was as high as 24,000 ug/l, and MTBE was as high as 10,000 ug/l.

Despite these high concentrations, there has been no remediation over the past 17 years, other than the previously noted over-excavation.  At the present time, however, Redwood Oil's consultant plans to implement a dual-phase extraction system combined with air/ozone sparging. The consultant has recommended "intermittent vacuum truck events" as opposed to a continuously operating system to achieve site remediation.

At the present time there is a significant amount of residual mass of contamination remaining in the saturated zone.  Current estimates put the residual mass at between 4,500 kg. and 14,500 kg.  There is no available information as to the extent to which the consultant has performed current sensitive receptor surveys or whether any preferential pathway evaluations have been done.  There is also no apparent documentation as to whether any aquifer impact assessment has been conducted to determine if petroleum hydrocarbons have reached and/or are impacting the underlying aquifer.

River Watch seeks Redwood Oil's use of "best available technology" to insure that no surface water (specifically the aforementioned intermittent creek), the aquifer(s) or groundwater is further contaminated by this plume.

4.     **Redwood Oil Service Station [Santa Rosa Chevron #1]**
       **1100 Bennett Valley Road,  Santa Rosa, CA**

This station is located at the intersection of Bennett Valley Road and Hendley Boulevard in Santa Rosa in an area of mixed commercial and residential structures.  The real property on which this facility lies is currently owned by Peter Van Alyea, Peggy Van Alyea and Robert I. Barbieri.

The first unauthorized released of petroleum hydrocarbons was detected in February of 1990. It was not until 1998, however, that the first over-excavation was accomplished, followed by well installation and monitoring commencing in September of that year.    Impacted soil beneath sidewalks and streets to the north and the south of the site could not be accessed for removal, and have remained contaminated since that time.

An air sparging system was installed in the year 2000 to enhance bioremediation by increasing oxygen concentrations in the subsurface soil and groundwater. In 2003 a groundwater extraction system became operational, and is the only system currently in use at the present time. River Watch takes the position that groundwater extraction by itself is inadequate to achieve eventual site remediation.

Impacted groundwater migration continues to occur in a westerly direction. Contamination has been detected in soil and groundwater samples taken at 1016 Bennett Valley Road, approximately 300 ft. downgradient and west of the former USTs at the site. The vertical extent of the plume has been estimated to be 100 ft. bgs.

Free phase hydrocarbons are currently found in several of the extraction wells. Low concentrations of xylenes have been detected in a domestic well located at 1020 Bennett Valley Road (December 2006 sampling). From this it is apparent the underlying aquifer has been compromised by this plume.

As of the last available monitoring data from December of 2006, TPHg levels were found to be as high as 49,000 ug/l, benzene recorded at 14,000 ug/l, toluene as high as 2,200 ug/l, and MTBE as high as 1,000 ug/l.

At the present time, 17 years after the first reported release, the lateral and vertical characterization of the plume is still being assessed.

River Watch remains concerned that this is another site for which remediation efforts have long been deferred ,while regular contaminant monitoring has taken over as the principal activity and concern. The site continues to represent an immediate threat to domestic water supplies and environmental degradation by infiltration into local groundwater and the related aquifer. Efforts must be taken proactively to prevent further contamination of these water supplies.

## REGULATORY STANDARDS

Water Quality Objectives exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply, as well as those listed above.

The RWQCB has adopted a Water Quality Control Plan ("Basin Plan") which designates all surface and groundwater within the North Coast and San Francisco Bay regions as capable of supporting domestic water supply. The RWQCB has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for petroleum constituents in surface and groundwater within the region of 50 ppb for TPHg, 1 ppb for benzene, 150 ppb for toluene and 13 ppb for MTBE.

## VIOLATIONS

### A.     Permits, Standards and Regulations
### [42 U.S.C. § 6972(a)(1)(A)]

Between approximately January of 1990 and the date of this Notice, Redwood Oil has caused or permitted, causes or permits, or threatens to cause or permit, petroleum contaminants, petroleum constituents and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, a condition of pollution or nuisance. The discharge and threatened discharge of such petroleum waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Provisions of RCRA govern the use and operation of USTs used for storage of petroleum products (subchapter IX, 42 U.S.C. § 6991 et seq.). The RCRA UST regulatory program is adopted and implemented in California under the State Underground Storage of Hazardous Substance Account Act (California Health & Safety Code § 25280 et seq.).

Between approximately January of 1990 and the date of this Notice, Redwood Oil's use and storage of petroleum at the sites identified above, have allowed significant quantities of hazardous petroleum constituents to be released or discharged into soil and groundwater in violation of the provisions of the RCRA and of the California UST regulatory programs including, but not limited to, provisions governing general operating requirements for USTs, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.

Specifically, with respect to each of the sites identified above, Redwood Oil is responsible for the following statutory violations:

1.     Failure to prevent a release, in violation of 40 CFR §§ 280.30, 280.31 and California Health & Safety Code §§ 25292.1(a) - (c), 25292.3(a) and (b).

2.     Failure to properly detect and monitor releases, in violation of 40 CFR §§ 280.40 - 280.44 and California Health & Safety Code § 25292.

3.     Failure to properly report and keep records of the release, in violation of 40 CFR §§ 280.34, 280.50, 280.52, 280.53, 280.63(b) and California Health & Safety Code §§ 25289, 25293 and 25295(a)(1).

4.     Failure to take proper corrective action, in violation of 40 CFR §§ 280.53, 280.60 - 280.66 and California Health & Safety Code § 25295(a)(1).

**B.**   **Imminent and Substantial Endangerment**
        **[42 U.S.C. § 6972(a)(1)(B)]**

Between approximately January of 1990 and the date of this Notice, Redwood Oil used and stored, and continues to use and store, petroleum products at the sites identified in this Notice in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and groundwater beneath each of the sites and adjacent properties. The contaminant levels of TPHg, benzene, toluene, and MTBE in groundwater at said sites are significantly greater than the allowable MCL and/or WQO for said constituents. Benzene, MTBE, TAME, and TBA are known or suspected carcinogens. Toluene is a reproductive toxin. Ethylbenzene, methanol and xylene are live toxins. All are known to harm both plants and animals. In their concentration at said sites, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this Notice are knowing and intentional in that Redwood Oil has used, stored and sold petroleum products at the sites identified in this Notice which are known to contain hazardous substances; and, in that it has intended that such products will be sold to and used by the public. Redwood Oil has known of the contamination at said sites since at least January of 1990, and has also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to said sites, and to continually contaminate and re-contaminate actual and potential sources of drinking water.

Violations of RCRA of the type alleged in this Notice are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this Notice is intended to cover all violations of RCRA by Redwood Oil evidenced by information which becomes available to River Watch after the date of this Notice.

## IDENTIFICATION OF NORTHERN CALIFORNIA RIVER WATCH

The entity providing this Notice is Northern California River Watch, a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California, located at 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Telephone: (707) 824-4372.

The violations of Redwood Oil as set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected watershed areas. The members of River Watch use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like.

Their health, use and enjoyment of this natural resource are conditions specifically impaired by Redwood Oil's violations of RCRA as described in this Notice.

## CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
Fax (707) 528-8675

## CONCLUSION

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the United States Environmental Protection Agency and the State in which the violation is alleged to have occurred (42 U.S.C. § 6972(b)(1)(A)). RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. (42 U.S.C. § 6972(b)(2)(A)).

River Watch believes this Notice sufficiently states the grounds for filing suit under the statutory and regulatory provisions of RCRA as to each of the four sites referenced above. At the close of the notice periods or shortly thereafter, River Watch intends to file a lawsuit against Redwood Oil and the individual real property owners identified in the Notice, under the provisions of RCRA, for each of the violations as set forth herein, and with respect to the existing conditions at said sites.

During the 90 day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this Notice. If Redwood Oil wishes to pursue such discussions in the absence of litigation, I would encourage you to initiate such discussions immediately so that we might be on track to resolving the issues of River Watch before the end of the notice period. River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours

Jack Silver

Notice of Violations - Redwood Oil Company, Inc. - Page 9

cc:

Stephen Johnson, Administrator
U.S. Environmental Protection Agency
401 M Street, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne St.
San Francisco, CA 94105

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

Christopher Van Alyea, Registered Agent
Redwood Oil Company
249 E. Glaucus, Apartment C
Encenitas, CA 92024

Robert I. Barbieri, Owner
Peggy Van Alyea Owner
455 Yolanda Ave.
Santa Rosa, CA 95402

Cotati Chevron - Site Operator
7716 Old Redwood Highway
Cotati, CA 94931

Santa Rosa Chevron - Site Operator
1100 Bennett Valley Road
Santa Rosa, CA 95401

Windsor Chevron - Site Operator
9120 Old Redwood Highway
Windsor, CA 95492

Cameron Scott Kirk, Jr., Esquire
Beyers Costin
200 Fourth Street, Suite 400
P.O. Box 878
Santa Rosa, CA 95402-0878