Cameron S. Kirk, Esq. (SB# 108013)
Karin P. Beam, Esq. (SB# 112331)
SPAULDING McCULLOUGH & TANSIL LLP
90 South E Street, Suite 200
P.O. Box 1867
Santa Rosa, CA 95402
Telephone:    (707) 524-1900
Facsimile:    (707) 524-1906
kirk@smlaw.com; beam@smlaw.com

Attorneys for Defendant
REDWOOD OIL COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a Non-Profit Corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>REDWOOD OIL COMPANY, INC. and DOES 1-10, inclusive,<br><br>    Defendants. | Case No.: 4:08-cv-02141-CW<br><br>REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS<br><br>Date:    August 28, 2008<br>Time:   2:00 p.m.<br>Courtroom:    2, 4th Floor<br>Judge: Hon. Claudia Wilken |

## I. INTRODUCTION

In order to avoid the obvious implications of the Consent Decree it agreed to in 2000, Northern California River Watch ("River Watch") claims that its new Notice of Violations and subsequent Complaint are premised on different statutory requirements and alleged new hydrocarbon releases, albeit with regard to the same real property. River Watch asserts that the 2008 Complaint describes violations not included in the 1999 litigation, and therefore falls beyond the scope of the settlement agreement it made. These arguments proffered in opposition to the pending Motion to Dismiss deserve and require careful analysis.

River Watch settled its contamination claims with Redwood Oil at great expense to defendant, and put into place a procedure whose purpose was to establish appropriate agency oversight and regulation of remediation at the contaminated sites. The Consent Decree and Court

1

1  Order put River Watch "out of the loop" after it obtained Redwood Oil's agreement to work with the

2  authorities to remediate these lands.  Now that it has taken substantial sums from Redwood Oil and

3  set this process in motion, it is the regulatory agencies who have authority and power to oversee

4  Redwood Oil"s progress, and not River Watch.

5  But River Watch now contends that the Complaint it filed in April 2008 is premised both on

6  claims <u>not</u> resolved via the Consent Decree it made in 2000, as well as alleged "current and ongoing

7  discharges and releases of petroleum products and petroleum constituents . . . ."  (Opposition Points

8  and Authorities, at page 4, lines 5-7.)  Arguing that Redwood Oil has failed to establish that

9  allegations in the pending Complaint are identical to those described in the original Complaint, River

10  Watch also avers that Redwood Oil has not established that "there have been no new releases at any

11  of the UST sites."  (Opposition, at page 5, lines 25-27, page 6, line 1).  Redwood Oil will address

12  these contentions separately.

13  <u>II. RIVER WATCH ADMITS THERE ARE NO "NEW RELEASES".</u>

14  The backbone of the pending litigation is, and must be, the Notice of Violations forwarded to

15  Redwood Oil by River Watch on November 29, 2007.  That Notice described concerns pertaining to

16  four specific real property sites, described with particularity at pages 2 through 6 of the Notice.

17  Careful analysis of the claims made with regard to those sites discloses that the Notice <u>does not

18  allege any release or contamination on these properties occurring subsequent to the Consent Decree

19  filed in this District Court on November 29, 2000</u>.  It is not Redwood Oil's burden to prove that no

20  new contamination has occurred, as River Watch suggests.  Rather, River Watch's own Notice, on its

21  face, fails to allege new contamination and it actually refutes that possibility.   The particular facts

22  with regard to each Site are as follows:

23      1.     <u>Redwood Oil Plant No. 141, 455 Yolanda Avenue, Santa Rosa, California (Listed On

24         Exhibit B to the Consent Decree, Pages 2-3 of the Notice).</u>

25  The 2007 Notice of Violations, at page 3, describes ten USTs "removed in 1999 and 2000".

26  Thereafter, the activities described and complained of at this site are remedial only.  There is no

27  allegation contained in the 2007 Notice that any new release or contamination occurred at this

28  property subsequent to the Consent Decree filed in late 2000.

1    2.    <u>Redwood Oil Service Station (Windsor Chevron), 9120 Old Redwood Highway,</u>
2        <u>Windsor, California (Listed on Exhibit B to the Consent Decree, Pages 3-4 of the</u>
3        <u>Notice).</u>

4    The 2007 Notice of Violations provides a timeline specifying alleged petroleum releases at
5 this location as well. At page 4 of the Notice, River Watch asserts that a UST was removed in 1991,
6 resulting in a hydrocarbon release. No more recent releases are claimed or described with regard to
7 this property. According to River Watch's own analysis, the activity occurring at this site since the
8 UST removal in 1991 has been monitoring and remediation only.

9    3.    <u>Redwood Oil Service Station No. 102 (Cotati Chevron), 7716 Old Redwood Highway,</u>
10        <u>Cotati, California (Listed On Exhibit B to the Consent Decree, Pages 4-5 of the</u>
11        <u>Notice).</u>

12    River Watch's 2007 Notice of Violations describes hydrocarbon releases discovered in 1990
13 at this site, with four USTs removed in June of 1999. No further allegations are contained in the
14 Notice regarding any more recent releases of hydrocarbon. River Watch contends that there is
15 "residual contamination" at the site, but complains in the Notice only that remediation is lacking.
16 There is no allegation of new hydrocarbon contamination.

17    4.    <u>Redwood Oil Service Station (Santa Rosa Chevron No. 1), 1100 Bennett Valley Road,</u>
18        <u>Santa Rosa, California (Listed on Exhibit B to the Consent Decree, Pages 5-6 of the</u>
19        <u>Notice).</u>

20    The final site described in the 2007 Notice of Violations by River Watch is real property
21 where the alleged first release of hydrocarbons was detected in February 1990. Thereafter, according
22 to River Watch, excavation occurred, monitoring commenced, and ground water extraction continues.
23 Nowhere in the 2007 Notice of Violations pertaining to this site does River Watch allege any more
24 "recent" or "new" contamination of the property. As in the other three sites delineated, the alleged
25 contamination is <u>old</u>, predating the Consent Decree made in 2000 by years. River Watch's concerns
26 as described in the 2007 Notice of Violations, the hub of this pending action, go to remediation
27 efforts alone.
28

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS
Case No. C08-02141 CW

The Consent Decree made between these parties clearly incorporated the four sites now listed in the 2008 Complaint. Exhibit B of the Consent Decree lists the precise addresses that are now at bench. The sole and singular purpose of that agreement was to resolve the concerns of River Watch with regard to remediation of contamination at the sites in question, and a specific system was set up to accomplish that goal. The Consent Decree and Court Order provided a precise mechanism for River Watch to assure that the contamination was appropriately addressed, and provided a seven year time period for monitoring that process above and beyond agency oversight and monitoring that has occurred. At any time during those seven years, River Watch could have taken either Redwood Oil or the designated agencies to Court. It did not do so.

### III. THERE ARE NO "NEW CLAIMS" TO FORM THE BASIS OF NEW LITIGATION.

River Watch also seeks to have a second day in Court by claiming that its new Notice of Violations included claims not contained in the original 1999 litigation. In support of its position, it cites to law standing for the general proposition that claims arising after an original litigation is brought are not barred, and that every violation of a standard or regulation gives rise to a new claim. In the normal course of litigation, perhaps River Watch is correct. But this analysis begs the question. Here, a settlement agreement was made between these parties, at considerable and ongoing expense to Redwood Oil. The agreement became a Court Order, and after spending hundreds of thousands of dollars in reliance on agreed specifications as to how contamination claims for these properties were to be handled, Redwood Oil now faces a new lawsuit which asks the Court to cover its eyes and begin analysis of the same issues all over again. This is contrary to both contract and procedural law.

Specifically, at pages 3 and 4 of its Opposition, River Watch alleges that the following new claims are presented herein:

40 CFR Sections 280.30, 280.31;
California Health & Safety Code Sections 25292.1(a)c, 25292.3(a)b;
40 CFR Sections 280.40-280.44;
California Health & Safety Code Sections 25292;
40 CFR Sections 280.34, 280.50, 280.52, 280.53, 280.63(b);
California Health & Safety Code Sections 252.89, 252.93. 252.95(a)(1);
40 CFR Section 280.53, 280.60-280.66;
California Health & Safety Code Section 252.95(a)(1);

1  This effort is disingenuous.  First, by its own terms, the Consent Decree entered in November
2  2000 represents that Redwood Oil was in violation of "California Safe Drinking Water & Toxic
3  Enforcement Act of 1986 (H&SC 25249.5, *et seq*.)".  (Consent Decree and Order at page 1, lines 23-
4  24.)  Consequently, all of the alleged "new claims" made with regard to Health & Safety Code
5  sections as described above were specifically addressed by the Consent Decree and Order.  Those
6  claims are not new and cannot now be raised.

7  In addition, the Consent Decree was premised on alleged releases and contamination
8  occurring prior to November 2000.  As described herein, River Watch acknowledges via its own
9  Notice of Violations that there have been no subsequent releases.  The goal of the Consent Decree
10  was to address remediation at the sites, and ensure interaction and compliance with agency orders
11  relevant to the contamination described.  At page 3 of the Consent Decree, paragraph 7(a), the parties
12  determined that <u>each Redwood Oil site listed in Exhibit B (which include the four sites at bench)</u>
13  <u>"will be examined and a schedule … to address site remediation will be prepared and presented by</u>
14  <u>Redwood Oil to the applicable lead agency ("hereinafter LA") for approval within four years."</u>  The
15  clear intent of the Consent Decree, then, was to have governmental agencies involved in the
16  remediation of these sites.  As described in the original moving papers and the Declaration filed in its
17  support, that has been done; the process is still underway.

18  In accord, Title 40 CFR section 280, *et seq*., ostensibly the "new" violations at bench, are
19  regulations addressing requirements regarding reports of release, record keeping, release detection,
20  and investigation.  These regulations describe removal of free product and corrective action plans, all
21  of which are contemplated and incorporated within the terms and intent of the Consent Decree and
22  Court Order already made.  As there have been no new releases, alleged new "violations" necessarily
23  fall under the umbrage of the Consent Decree process, whereby Redwood Oil agreed to and has
24  undertaken its responsibilities, and River Watch agreed to environmental remediation accomplished
25  by agency oversight.

26  By its own admission, as early as May 2007, River Watch possessed information it deemed
27  sufficient to determine compliance with the Consent Decree by Redwood Oil.  In fact, by that point,
28  River Watch says it <u>had made that determination</u>, concluding that the provisions of the Consent

1   Decree had not been met. (Opposition, at page 2, line 11-20) Obviously, Redwood Oil did not agree
2   with that assessment, but River Watch did nothing. It was not until mid September, over four months
3   later, that River Watch even convened a meeting with Redwood Oil. Again by its own admission,
4   River Watch was not satisfied with the results of the meeting, leaving without an "<u>additional
5   agreement or further Consent Decree requiring Redwood Oil to complete the remediation of a
6   number of its sites.</u>" (Opposition, page 2, lines 21-25)
7         This is an important point. River Watch's concern was <u>remediation,</u> not "new" releases.
8   Neither the chronology contained in the moving papers, the Notice of Violations, nor the Declaration
9   of Plaintiffs' counsel describes knowledge of a <u>new</u> hydrocarbon release. Until November 2007,
10  River Watch still had the opportunity to abide by the terms of the agreement it made and seek the
11  Court's assistance with its remediation concerns. But even after additional correspondence among the
12  parties during the month of October 2007, River Watch still sat on its rights. Despite its belief that
13  the Consent Decree terminated on November 1, 2007, River Watch chose not to abide by the Decree's
14  self-contained process. Instead, it sent a new Notice of Violations to Redwood Oil at the end of that
15  month. Indisputably, the issues addressed in the meetings, correspondence, and new Notice of
16  Violations related to <u>remediation efforts</u> at the sites, all of which were addressed by the Consent
17  Decree and Order after strenuous negotiations years before. The recitation of "new" statutes as the
18  foundation of a second bite at the apple cannot be countenanced. This wheel cannot be reinvented,
19  and River Watch must now look to the applicable agencies for relief, if it truly is concerned about
20  remediation and not simply seeking additional fees.
21                                   IV. <u>CONCLUSION</u>
22        River Watch expressed no interest in these properties between November 2000 and mid
23  February 2007. Ample opportunity existed for River Watch to monitor remediation during those
24  years. Ample opportunity existed for River Watch to address any concerns it might have with regard
25  to remediation progress on the four sites at bench. No concerns were ever addressed; no inquiries
26  were ever made. By its own admission, River Watch's first foray into the "monitoring" of
27  remediation in February 2007 was its first request for <u>copies of relevant documents</u>. Redwood Oil
28  paid dearly in both remediation costs <u>and</u> Plaintiff's attorney's fees to obtain the benefit of an agreed

1  mechanism for resolving the contamination dispute.  River Watch has not kept its part of the bargain.

2  It took Redwood Oil's money, then laid low and failed to act during the time allotted it for action.

3  Now, it seeks to address the <u>very same issues</u> via <u>the very same claims</u> asking for <u>additional</u>

4  attorney's fees in the process.  We have been here before.  River Watch is not entitled to be here

5  again.  Redwood Oil respectfully requests that its Motion to Dismiss be granted.

6  DATED:  August 14, 2008                    Respectfully submitted,

7                                             SPAULDING McCULLOUGH & TANSIL LLP
                                               Attorneys for Defendant
8                                             REDWOOD OIL COMPANY, INC.

10                                             By:      <u>/s/ Karin P. Beam</u>
                                                        Karin P. Beam