1
2
3
4
5
6                          IN THE UNITED STATES DISTRICT COURT
7                          FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
10   NORTHERN CALIFORNIA RIVER
     WATCH, a non-profit corporation,
11                                                      No. C 08-02141 WHA
                 Plaintiff,
12
        v.
13
     REDWOOD OIL COMPANY, INC.,                         **ORDER GRANTING
14   and DOES 1–10, inclusive,                          DEFENDANT'S
                                                        MOTION TO DISMISS**
15               Defendants.
16   _____/
17
                                    **INTRODUCTION**
18
            In this environmental action brought under the Resource Conservation and Recovery
19
     Act ("RCRA"), defendant moves to dismiss on the ground of res judicata.  Because this order
20
     finds that the subject of the complaint is the same as a prior complaint that was merged into a
21
     consent decree, defendant's motion must be **GRANTED**.
22
                                     **STATEMENT**
23
            Plaintiff first filed suit against defendant in 1999.  Plaintiff sued under the Clean Water
24
     Act ("CWA"), 33 U.S.C. 1251 et. seq., RCRA, 42 U.S.C. 6901 et. seq., and state environmental
25
     regulations for discharges of petroleum chemicals from defendant's facilities and underground
26
     storage tanks.  That action resulted in a settlement agreement that was incorporated in a consent
27
     decree.  The decree was signed by this Court on November 29, 2000.  The decree provided that
28
     defendant would remediate environmental contamination at many of its facilities.  The decree

**United States District Court**
For the Northern District of California

1   provided a monitoring and discovery procedure so that plaintiff could keep abreast of progress

2   (or lack thereof) in the remediation effort.  It had a termination date of November 1, 2007.

3   Pursuant to the consent decree, plaintiff eventually requested from defendant copies

4   of documents relevant to progress in the remediation efforts.  That request was made on

5   February 12, 2007.  In May, defendant provided some of the relevant documents.  Plaintiff then

6   made a determination that "much of the remediation work had not been initiated at many of the

7   sites, and that the provisions and requirements of the consent decree had not been met"

8   (Silver Decl. ¶ 4).  Defendant disagreed with plaintiff's assessment.  The parties were not able

9   to resolve their dispute before the consent decree terminated.  Nor did plaintiff petition this

10   Court to enforce the consent decree.  The consent decree expired.

11   Plaintiff gave notice on November 29 to defendant of alleged current and ongoing

12   RCRA violations at four of its facilities.  (The "Notice of Violation" is fully incorporated into

13   plaintiff's complaint.)  Those four facilities had been covered by the consent decree.

14   Defendant did not respond.  Plaintiff filed a new complaint on April 24, 2008, alleging that the

15   four facilities are still in violation of RCRA and state and local environmental regulations.

16   Defendant now moves to dismiss under the doctrine of res judicata on the ground that

17   the consent decree precludes plaintiff's action.

18   **ANALYSIS**

19   **1.   RULE 12(b)(6).**

20   Ordinarily, a Rule 12(b)(6) motion cannot be used to raise an affirmative defense.

21   Res judicata is an affirmative defense.  "However, when all relevant facts are shown by the

22   court's own records, of which the court takes notice, the defense may be upheld on a Rule

23   12(b)(6) motion without requiring an answer."  *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.

24   1992).  Here, the plaintiff's complaint and the consent decree disclose sufficient facts and

25   allegations to determine whether the consent decree precludes the present action because those

26   documents reveal whether the elements of res judicata are satisfied.

27   The consent decree resolved plaintiff's claims against defendant under 42 U.S.C.

28   6901–7000 for alleged contamination of drinking water and groundwater at numerous sites.

*United States District Court*
For the Northern District of California

2

United States District Court

For the Northern District of California

1   The decree provided, *inter alia*, that defendant would clean up environmental contamination at

2   many of its facilities.  It also provided that plaintiff could obtain documents related to

3   defendant's remediation efforts and could inspect defendant's facilities:

4           Each Redwood Oil site listed in Exhibit B will be examined and a
            schedule to address site remediation will be prepared and
5           presented by Redwood Oil to the applicable lead agency for
            approval within four years.  (i) Redwood Oil shall make available
6           for inspection by River Watch, within twenty days of a written
            notice, any and all files requested relating to the facilities'
7           underground tank clean up, ground water pollution, storm water
            pollution and/or associated pollution issues of the facilities.  (ii)
8           Redwood Oil shall provide copies at their cost, of any and all
            reasonable requests for documents by River Watch relating to
9           underground tank clean up, ground water pollution, storm water
            pollution and associated pollution issues of the facilities.  (iii)
10          Redwood Oil shall make any and all facilities available for
            inspection by River Watch, within twenty days of written notice to
11          [defendant].

12  Exhibit B listed the four sites at issue in this action.  The consent decree terminated on

13  November 1, 2007.

14          Plaintiff's new complaint seeks relief under the citizen-suit enforcement provisions of

15  RCRA.  Specifically, plaintiff alleges that defendant is liable under Sections 6972(a)(1)(A) and

16  6972(a)(1)(B).  Section 6972 (a)(1)(A) provides that:

17          any person may commence a civil action on his own behalf against
            any person who is alleged to be in violation of any permit,
18          standard, regulation, condition, requirement, prohibition, or order
            which has become effective pursuant to this chapter.

19
20  Plaintiff alleges that defendant is in violation of permits, standards, and regulations because the

21  company "has failed to comply with the statutory and regulatory leak prevention, leak detection,

22  monitoring, and remediation requirements imposed under the RCRA and described in the

23  RCRA Notice" (Compl. ¶ 23).  The RCRA notice stated that plaintiff would commence a civil

24  action against Redwood Oil at the expiration of the RCRA notice period on the following

25  ground:

26          Redwood Oil's use and storage of petroleum products at its
            gasoline station sites as identified in this Notice, has and
27          continues to violate permits, standards, regulations, conditions,
            requirements and/or prohibitions effective pursuant to RCRA
28          regarding storage of petroleum in *underground storage tanks*.

    (Emphasis added.)

                                              3

Because the question of whether plaintiff's claims are precluded turns on whether the source of contamination in the present action is the same as the source of contamination in the first action it is useful to briefly discuss the history of the four facilities at issue. The facilities will be referred to as "site A," "site B," "site C," and "site D"[*] both for simplicity sake and to correspond with plaintiff's complaint.

Site A: Two underground storage tanks were removed in 1990. An unauthorized hydrocarbon release was detected at that time. Petroleum contamination was detected in soil and groundwater in 1991. In August of 1995, another hydrocarbon leak was detected. Ten underground storage tanks were removed in 1999 and 2000. Plaintiff relies on data from groundwater monitoring that was done in January of 2007 for its allegation that environmental contamination continues at site A.

Site B: Petroleum contamination was detected in the soil and groundwater in 1991. One underground storage tank was removed in 1991. The site's remaining four tanks were removed in 1995. New underground storage tanks were installed in 1995. Plaintiff's notice of violation does not specify how many tanks were installed. Plaintiff relies on data from groundwater monitoring in April of 2007 for the allegation that environmental contamination continues at site B.

Site C: Petroleum contamination was detected in the soil and groundwater in 1991. Four underground storage tanks were removed in 1999. New tanks were installed in 2000. The notice of violation does not state how many tanks or exactly when in 2000 they were installed. Plaintiff relies on data from groundwater monitoring in December 2006 for its allegation that environmental contamination continues at site C.

Site D: Petroleum contamination was detected in soil and groundwater in 1990. Plaintiff provides no information as to when, if ever, underground storage tanks were removed, or when, if ever, new underground storage tanks were installed. Plaintiff relies on data from

---

[*] Site A is located at 455 Yolanda Avenue, Santa Rosa. Site B is located at 9120 Old Redwood Highway, Windsor. Site C is located at 7716 Old Redwood Highway, Cotati. And, Site D is located at 1100 Bennet Valley Road, Santa Rosa.

United States District Court

For the Northern District of California

4

1    groundwater monitoring in December 2006 for its allegations that environmental contamination

2    continues at site D.

3          Plaintiff also alleges that defendant is in violation of numerous state health and safety

4    codes.

5          Section 6972(a)(1)(B) provides that:

6              any person may commence a civil action on his own behalf against
               any person, including the United States and any other
7              governmental instrumentality or agency, to the extent permitted by
               the eleventh amendment to the Constitution, and including any
8              past or present generator, past or present transporter, or past or
               present owner or operator of a treatment, storage, or disposal
9              facility, who has contributed or who is contributing to the past or
               present handling, storage, treatment, transportation, or disposal of
10             any solid or hazardous waste which may present an imminent and
               substantial endangerment to health or the environment.
11
     Plaintiff alleges that it is entitled to relief under Section 6972(a)(1)(B) because "[b]etween
12
     approximately January of 1990 and [November 29, 2007], Redwood Oil used and stored, and
13
     continues to use and store, petroleum products at the sites identified in this notice in a manner
14
     which has allowed significant quantities of hazardous petroleum constituents to be discharged
15
     to soil and groundwater beneath each of the sites and adjacent properties" (Opp. Exh. A).
16
          A.      **Plaintiff's Claims for Alleged Violations**
17                **During the Consent Decree Period.**

18         The consent decree precludes plaintiff's claims for defendant's alleged violations that

19   were the subject of the remediation provisions of the consent decree and which occurred *during*

20   *the period when the consent decree was in effect.*  The preclusive effect of the consent decree on

21   plaintiff's claims for alleged violations that occurred *after* the consent decree terminated raises

22   a different question.  "It is well established that a judgment based on the parties' stipulation is

23   only res judicata as to the period covered by the action, and is not entitled to collateral estoppel

24   effect in an action for a later period." *United States v. California Portland Cement Company*,

25   413 F. 2d 161, 163 (9th Cir. 1969).

26         With respect to sites A, B, and D, plaintiff's claims for alleged violations occurring

27   during the consent-decree period are the same claims plaintiff made in its first complaint.

28   Plaintiff alleged in its first complaint that defendant's facilities polluted nearby waterways in

United States District Court
For the Northern District of California

1    violation of CWA, RCRA, and state and local environmental regulations.  The factual basis for

2    plaintiff's allegations was detection of petroleum hydrocarbon contamination from defendant's

3    current and former underground storage tanks, bulk fuel storage and distribution facilities

4    (Opp. Br. 1).  Plaintiff alleges in its new complaint that defendant violated RCRA and

5    California law governing the underground storage of hazardous substances.  The factual basis

6    for its new allegations is the "discharge of pollution from its current and/or former fuel

7    dispensing facilities and its properties" (Compl. 1).  The source of the alleged discharges is

8    underground storage tanks.

9         The factual bases for the first suit and the new suit are the same.  There can be no new

10   source of contamination because underground storage tanks were removed from the facilities

11   between 1990 and 2000.  Plaintiff does not allege that any new underground storage tanks have

12   been installed at sites A, B, and D (Compl. Exh. A).  Furthermore, the allegations are based on

13   testing that was conducted *during* the consent-decree period.  Because the complaint does not

14   allege a new factual basis for the asserted environmental violations, these are the same claims

15   that were covered by the consent decree.

16        Plaintiff contends that these are new claims because they concern violations that

17   occurred after it filed its first  action.  Plaintiff cites two decisions for the proposition that each

18   new violation gives rise to a separate cause of action which is not barred by res judicata.

19   *Los Angeles Branch NAACP v. Los Angeles Unified School District*, 750 F.2d 731, 739–740

20   (9th Cir. 1984).  *The Old Timer, Inc. v. Blackhawk-Central City Sanitation District*,

21   51 F. Supp. 2d 1109, 1118 (D. Colo. 1999).

22        Plaintiff's argument misses the mark.  Although it is true that "[t]raditional principles

23   of preclusion allow additional litigation if some new wrong occurs," *Supporters to Oppose*

24   *Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1325 (7th Cir. 1992), that is only part of the

25   story.  To defeat a claim preclusion defense, the new wrong cannot be related in origin to the

26   pre-settlement violations.  *Friends of Milwaukee's River v. Milwaukee Metropolitan Sewerage*

27   *Dist.*, 382 F.3d 743, 758 (7th Cir. 2004).  In *Friends*, the parties reached a court settlement

28   which provided for remediation of local waterways that were contaminated with raw sewage.

6

The court held that even though there were continuing violations after the settlement, those new violations did not provide the plaintiff with new causes of action because they were barred by res judicata.

> The 2002 Stipulation was intended to address the underlying causes of the continuing violations by implementing remedial measures some of which, due to their large scale, will take several years to complete. The State unquestionably was aware that violations would continue while the projects mandated by the 2002 Stipulation are being implemented. Even though the 2002 Stipulation does not release [the defendant] from liability for post-Stipulation violations, those post-Stipulation violations are clearly related in origin to the pre-Stipulation violations and have the same factual basis. Thus, the August 2002 violation (and other post-Stipulation violations not specifically mentioned in the 2002 Stipulation) are not separate and distinct causes of action, and the element of res judicata requiring an identity of causes of action is met here.

*Ibid*.

Here, the same reasoning applies. Even though plaintiff alleges that environmental violations continued after the first suit was filed, the violations are related in origin to the pre-consent decree violations and have the same factual basis. All alleged violations are the result of defendant's underground storage tanks that existed before plaintiff's first suit was filed, and were the subject of the remediation efforts specified in the consent decree. Plaintiff makes no allegation that new operations or new underground storage tanks are the causes of new violations at sites A, B, and D. For res judicata purposes, these claims are the same as those made in the first action and are, thus, precluded by the consent decree.

Plaintiff further contends that the consent decree does not preclude the present claims because the claims are brought under different statutes. This argument must also fail. "A prior judgment is binding not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994). The court stated a test for claim preclusion:

> Whether the present action is the same cause of action as the prior action depends on whether it arises out of the same nucleus of operative facts as the prior claim. The legal theories of the two claims are relatively insignificant because a litigant cannot attempt to relitigate the same claim under a different legal theory of

**United States District Court**
For the Northern District of California

1

2

3

> recovery.  To determine whether the present claim and the prior claim constitute the same claim we consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.

4   *Id.* at 1195–1196.

5          Here, the claims for alleged violations that occurred during the consent decree period

6   are the same claims made in the first complaint because they arise out of the same nucleus of

7   operative facts.  Bringing the present action under different statutes than the first action does not

8   change the fact that the claims are the same.

9          Alleged contamination at site C presents a different issue.  According to the notice of

10  violation, at least one new underground storage tank was installed in 2000.  If a storage tank was

11  installed after November 29, 2000, when the consent decree went into effect, then alleged

12  contamination from that storage tank may present a new cause of action because that cause of

13  action would not arise out of the same nucleus of operative facts as the prior claim.  If plaintiff

14  can sufficiently allege in an amended complaint that contamination at site C is from a new

15  source that was not covered by the consent decree, then that complaint would not be barred by

16  res judicata.

17              **B.      Plaintiff's Claims for Alleged Violations**
                          **After the Termination of the Consent Decree.**

18

19          Plaintiff alleges that defendant continued to be in violation of RCRA and state and local

20  environmental regulations after the consent decree terminated.  The consent decree cannot

21  preclude plaintiff from bringing new claims for new wrongs after the termination of the consent

22  decree unless the decree itself provides for such preclusion.  "In the case of a judgment entered

23  by confession, consent, or default, none of the issues is actually litigated.  Therefore, the rule of

24  [issue preclusion] does not apply with respect to any issue in a subsequent analysis.  The

25  judgment may be conclusive, however, with respect to one or more issues, if the parties have

26  entered an agreement manifesting such an intention."  *In re Daley*, 776 F.2d 834, 838 (9th Cir.

27  1985).

28          There was not an express provision in the consent decree that precluded plaintiff from

bringing another action against defendant.  But, its dispute resolution and enforcement indicate

8

that the parties intended that plaintiff would be precluded from taking action against defendant

for contamination from sources covered by the consent decree if plaintiff could have brought that

action during the seven-year consent decree period.  The dispute resolution clause stated

(Request for Judicial Notice Exh. A):

> In the event River Watch believes Redwood Oil is in violation of this Consent Decree, River Watch shall notify Redwood Oil of the alleged violations(s) in writing.  Redwood Oil shall then have twenty days from receipt of the notice to respond to the allegations.  If Redwood Oil consents to the claim of violation and proceeds to commence remedial actions within twenty days of acknowledging a violation and diligently pursues completion, River Watch shall take no further action against Redwood Oil.  In the event Redwood Oil denies or does not acknowledge the claim of violation, within thirty days of the notice the parties shall meet and confer in an effort to mediate the dispute.  If the parties cannot informally resolve the conflict the parties shall submit the matter to mediation within thirty days or as soon as reasonable [sic] possible after the date they informally met and conferred . . .  Should mediation fail, either party may apply to this Court for declaratory relief and possible further action, including injunction, fees, costs, and penalties.

The consent decree also established that this Court would retain jurisdiction to enforce it:

> This Court shall retain jurisdiction from the date of entry of this Consent Decree through the date of termination of this Decree for the purposes of this Decree.  In addition, following the date of termination of this Consent Decree, this Court shall retain jurisdiction for the purposes of (1) resolving any dispute of this Decree, and (2) disposing of any motion to enforce this Decree, or of any contempt petition, filed on or before the date of termination.

> This Consent Decree shall terminate as to each of its provisions on November 1, 2007.

The terms of the consent decree plainly indicated that plaintiff could seek court

enforcement of the consent decree during its duration.  Plaintiff determined no later than May of

2007 that "much of the remediation work had not been initiated" at the four sites at issue, more

than five months prior to the termination of the decree (Silver Decl. ¶ 4).  There is no indication

that plaintiff attempted to reach its assessment at any other time during the seven-year period

when the consent decree was in effect.  Plaintiff waited until last September 18 to meet with

defendant to try and resolve the dispute.  That was unsuccessful.  No attempts at mediation were

made, and plaintiff did not petition this Court for enforcement.  Plaintiff could have brought an

enforcement action as early as September.  Instead, plaintiff let the consent decree lapse, gave

9

United States District Court

For the Northern District of California

1    defendant a new notice of violation under the RCRA in November, and then filed this action in

2    April 2008.

3           The consent decree did not forever immunize defendant from the issue of non-

4    compliance with environmental standards.  Third parties not in privity with plaintiff, for

5    example, have every right to sue without regard to the settlement.  But, the consent decree

6    clearly set to rest all contamination from the sources at play in the first suit if that issue could

7    have been raised during the consent-decree period.  Plaintiff had ample opportunity to resort to

8    its remedies under the decree but spurned the opportunity until the calendar ran out.  It is now

9    precluded from doing so.

10                                         **CONCLUSION**

11          For the foregoing reasons, defendant's motion to dismiss is **GRANTED**.  The cited

12   troubles with plaintiff's complaint as to site C may be cured.  Plaintiff may move by

13   **NOVEMBER 4, 2008**, for leave to amend.  Any such motion should be accompanied by a

14   proposed pleading and the motion should explain why the foregoing problems are overcome by

15   the proposed pleading.  Plaintiff must plead its best case.  Failing such a motion, all inadequately

16   pled claims as to site C will be dismissed.

17

18          **IT IS SO ORDERED.**

19

20   Dated:  October 15, 2008.

21                                                          WILLIAM ALSUP
                                                           UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28